SIGNED.

Dated: March 28, 2013



Randolph J. Haines, Chief Bankruptcy
Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re | Chapter 11 |
| | CASE NO. 2:08-bk-07465-RJH |
| MORTGAGES LTD., | |
| Debtor. | |
| BEAR TOOTH MOUNTAIN HOLDINGS LIMITED PARTNERSHIP, an Arizona limited liability partnership; AJ CHANDLER 25 ACRES, LLC, an Arizona limited liability company, CORNERSTONE REALTY & DEVELOPMENT, INC., an Arizona corporation; CORNERSTONE REALTY & DEVELOPMENT, INC. DEFINED BENEFIT PLAN AND TRUST, an Arizona trust; EVERTSON OIL COMPANY, INC., a Utah corporation; JAMES C. SCHNECK REVOCABLE TRUST DATED OCTOBER 1, 1999, a Wisconsin trust, James C. Schneck, trustee; LONNIE JOEL KRUEGER FAMILY TRUST, an Arizona trust, Lonnie J. Krueger, trustee; BRETT MICHAEL McFADDEN an unmarried man; MICHAEL JOHNSON INVESTMENTS II, L.L.C., an Arizona limited liability company; LOUIS B. MURPHEY, an unmarried man; MORLEY ROSENFIELD, M.D. P.C. RESTATED PROFIT SHARING PLAN, an Arizona trust, Morley Rosenfield, trustee; PUEBLO SERENO MOBILE HOME PARK L.L.C., an Arizona limited liability company; QUEEN CREEK XVIII, L.L.C., an Arizona limited liability company; WILLIAM L. HAWKINS FAMILY L.L.P., an Arizona limited liability partnership; L.L.J. INVESTMENTS, LLC, an Arizona limited liability company, | ADVERSARY NO. 2:12-ap-01849-RJH |
| | MEMORANDUM DECISION GRANTING MOTION TO DISMISS |
| Plaintiffs, | |

| | |
|---|---|
| 1 | )
| | v. ) |
| 2 | ) |
| | ML MANAGER LLC, an Arizona limited ) |
| 3 | liability company, MARK WINKLEMAN; ) |
| | BRUCE EDKIN and TAYLOR EDKIN; ) |
| 4 | DAVID FIELER and JANE DOE FIELER; ) |
| | ELLIOTT POLLACK and CATHY POLLACK; ) |
| 5 | KAREN EPSTEIN and SHELDON EPSTEIN; ) |
| | SCOTT SUMMERS and JANE DOE ) |
| 6 | SUMMERS, ) |
| | ) |
| 7 | Defendants. ) |
| | _____) |

The issues before the Court all relate to acts by agents of a liquidating trustee implementing a confirmed plan of reorganization. Defendants have filed a motion to dismiss the Plaintiffs' adversary complaint for many reasons, three of which are dispositive. First, most of the counts are barred by res judicata. Second, most of the Defendants' acts complained of are protected by quasi-judicial immunity. Third, those and the remaining claims violate F.R.Civ.P. Rules 8 and 9. Accordingly, the Motion to Dismiss is granted.

## I.     Factual Background.

In 2009, this Court confirmed the plan of reorganization proposed by the Official Investors Committee. That Plan established a liquidating trust and approved the appointment of a liquidating trustee. The Plan also expressly created an entity, ML Manager, LLC, to help the liquidating trustee implement portions of the confirmed Chapter 11 Plan. The Plan empowered ML Manager to "enter into independent contracts, hire one or more professional asset managers or companies, contract with a servicing agent, employ counsel and other professionals, among other things." The management of all of the Debtor's assets, consisting primarily of real property loans, promissory notes and deeds of trust, as well as all the Debtor's claims, demands, avoidance actions, and other causes of action were delegated either to ML Manager or to the Liquidating Trust. ML Manager and the Liquidating Trustee were explicitly empowered to secure exit financing for this case and the Plan provided that such exit financing was to be used "to provide working capital for the operations of . . . ML Manager, LLC, the Loan LLCs [created under the Plan], the Reorganized Debtor, and the Liquidating Trust."

1      The Plan also provided that the trust board (and its members, which included ML

2   Manager) would not be liable for acts and omissions made in connection with the Plan, the

3   Confirmation Order, or the Liquidating Trustee Agreement.

4      On September 28, 2012, Plaintiffs filed a state court complaint alleging a variety of

5   state law claims based on the implementation of the Plan. The claims included breaches of

6   fiduciary duty, negligence, conversion, intentional misrepresentation, negligent

7   misrepresentation, non-disclosure, conspiracy, breach of the covenant of good faith and fair

8   dealing, and aiding and abetting. This Court recently summarized the nature of these claims

9   and the underlying acts to which they relate and there is no need to repeat that summary here.

10  The state court case was removed to the Bankruptcy Court as an adversary proceeding, and this

11  Court has denied Plaintiffs motion to remand. Defendants have filed a motion to dismiss, to

12  which Plaintiffs responded, and the Court has heard oral argument.

13      **II.     Standard of Review.**

14      In order to survive a motion to dismiss, a complaint must contain more than a

15  "formulaic recitation of the elements of a cause of action;" it must contain factual allegations

16  sufficient to "raise a right to relief above the speculative level."[1] In considering a motion to

17  dismiss, the court must accept as true the allegations of the complaint in question[2], and construe

18  the pleading in the light most favorable to the party opposing the motion and resolve all doubts

19  in the pleader's favor.[3] The court will "presume that general allegations embrace those specific

20  facts that are necessary to support the claim."[4] However, the court need not accept legal

_____

22      [1] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ("[A]
    complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible
23  on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court
    to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

24
        [2] *Hosp. Bldg. Co. v. Rex Hosp. Trustees,* 425 U.S. 738, 740 (1976).
25
        [3] *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969).
26
        [4] *Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 256 (1994), quoting *Lujan v. Defenders of*
27  *Wildlife,* 504 U.S. 555, 561 (1992).

28
                                        3

conclusions "cast in the form of factual allegations."[5] Unlike factual allegations, no deference is owed to the non-moving party's legal claims or interpretations.[6]

### III.    Res Judicata

Res Judicata, or claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action. Claim preclusion requires three elements: (1) identity of claims; (2) final judgment on the merits; and (3) privity between parties.[7]

Claim preclusion is defined by the Restatement (Second) of Judgments §§ 18–26. It includes the separate principles of "merger," "bar," and "splitting." Merger prevents a plaintiff from asserting a new action on a "claim or any part thereof" when a "final personal judgment" had previously been rendered in plaintiff's favor on that claim. Restatement § 18(1). Bar prevents a plaintiff from bringing another action on the same claim that the plaintiff had previously lost. Restatement § 19. Splitting is the rule that a claim may not be separated from the "series of connected transactions, out of which the action arose." Restatement § 24. There are a number of exceptions to the rule against splitting, but none are relevant here. See Restatement § 26.

To apply claim preclusion, one must first define what the claim is, and it is the identity of claims element that is contested by Plaintiffs here. The "claim" for these purposes is not the Bankruptcy Code's definition of creditors' claims but rather the Restatement's definition.[8] According to the Restatement, a claim "consists of all rights to remedies that arise out of the same 'transaction,' determined 'pragmatically' based on the interrelation of the facts, whether they form a convenient trial unit, and whether treatment as a unit conforms to the parties' expectations. . . ."

---

[5] *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

[6] *Id.*

[7] *Turtle Island Restoration Network v. U.S. Dept. of State,* 673 F.3d 914, 917 (9th Cir. 2012).

[8] *In re Assoc. Vintage Group, Inc.,* 283 B.R. 549, 555 (9th Cir. BAP 2002).

4

The Ninth Circuit has adopted the principles of the Restatement in defining what constitutes the same "claims" for res judicata purposes: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same rights; and (4) whether the two suits arise out of the same transactional nucleus of facts.[9] These tests are merely reformulations of the Restatement definition of claims as "rights and remedies that arise out of the same transaction" and that "form a convenient trial unit."

This definition of "claim" thus hinges on what constitutes a "transaction." The Restatement states that while the definition of "transaction" is imprecise, it means "a natural grouping or common nucleus of operative facts." Restatement § 24 cmt. b. One of the determinants of this natural grouping or common nucleus is whether the issues constitute a "convenient unit for trial purposes." *Id.*

Under the "same transactional nucleus of facts" factor, the Court inquires whether, given the factual objections alleged in the current action, the Plaintiff could have raised those objections in the prior action. In short, the Court asks, given the facts in the Complaint, could the Plaintiff have raised the legal objections to the Bankruptcy Court?

Defendants' res judicata argument focuses on four issues raised by the Complaint, which they contend were or should have been addressed in the referenced prior litigation:

1.      ML Manager's authority to act on behalf of Plaintiffs – confirmation of the Plan, the Confirmation Order, and the Plaintiff's prior Declaratory Judgment Action;

2.      ML Manager's cost-shifting to the Plaintiffs costs of loan service – Plaintiff's prior Motion for Clarification;

3.      ML Manager's authority to sell the property – Plaintiff's previous objections to individual sale orders; and

---

[9] *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir. 1982); *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir.1980); *see also Assoc. Vintage Group*, 283 B.R. at 558.

4.     ML Manager's allocation of expenses – Plaintiff's prior objection to the Allocation Model and Distribution Orders.

Plaintiffs' primary argument that claim preclusion does not apply to these issues is that they do not seek to overturn any prior Court order or adjudication. In short, they claim to be litigating the implementation of the Plan, not the Plan itself. They claim to have had no evidence (or notice of facts) of misconduct until after the Plan was confirmed because the key facts occurred after confirmation. In addition, the Plaintiffs argue that even if some issues were addressed by prior Bankruptcy orders, those orders were in contested matters, and thus were subject to less procedural safeguards than if raised in an adversary proceeding (as the Complaint currently is), and thus, should be re-litigated.

While the implementation/confirmation distinction superficially sounds good in theory, it quickly breaks down on examination of the underlying facts pled in the Complaint. What is important is not the sameness of the legal conclusions, but the sameness of the underlying facts. All the Court has to do is determine whether those facts were enough to support an objection in some earlier litigation between these same parties. Generally, there are at least four categories of prior adjudication where Plaintiffs have raised issues relying on the same facts as raised in the Complaint.

1.     Clarification Order (October 21, 2009, Dkt. # 2323);

2.     Defendants' Declaratory Judgment Action, Plaintiffs' Counterclaim, and Declaratory Judgment (Adv. 2-10-ap-430; Declaratory Judgment dated July 27, 2012, Dkt. # 105);

3.     Allocation Model litigation (Minute Entry Sept. 21, 2010, Dkt. # 2959); and

4.     Individual Sale Motions and Plaintiffs' Objections (e.g., Order, Dec. 21, 2009, Dkt. # 2520).

A "Count by Count" analysis of the Complaint is necessary to determine the extent to which the Complaint relies on a "nucleus of operative facts" that is "common" with these previous litigations.

6

Count One, Fiduciary Duty, alleges both breaches of the duty of care and the duty of loyalty. To support this legal conclusion, Plaintiffs allege that Defendants did not do many things, some of which were the basis of past litigation. First, the Complaint alleges Defendants did not "maintain and provide a proper accounting." The facts pled as underlying this Count were available and expressly litigated on in the Clarification Order. Specifically, Plaintiffs relied on the same set of facts for their prior demand for proper accounting.[10] Second, the Complaint alleges Defendants did not "file an allocation of Exit Financing with the Bankruptcy Court" or implement a fair surcharge allocation scheme. This, and underlying facts, were available and expressly litigated prior to entry of the Allocation Model Order.[11] Third, the Complaint alleges that Defendants did not allow Plaintiffs' "input with respect to control of . . .assets", nor allowed Plaintiffs to "collect revenues from improper liquidation." These, and underlying facts, were available and expressly litigated on in the Declaratory Judgment Action. Finally, the Complaint alleges that Defendants "default[ed] on the Exit Financing," and did not disclose such default. This alleged default was known to Plaintiffs and could have been raised as an objection to the allocation of exit financing expenses that was approved in the Allocation Model Order. The alleged failures to keep Board minutes, to adopt a budget, to appeal property tax assessments, or to obtain [allegedly more] independent counsel were also known and could have been raised at any point when these alleged failures may have caused harm or expense to the Plaintiffs, such as when assets were sold or when expenses were allocated pursuant to the Allocation Model.

Count Two, Negligence, re-alleges and repeats the same facts as Count One. Thus, the above analysis on "same facts" applies equally here.

Count Three, Conversion, alleges that Defendants "exercise domination or control over undivided interests in REO Property and the funds belonging to Plaintiffs." This, and

---

[10] Plaintiff's Emergency Motion for Entry of Order: (I) Clarifying Chapter 11 Plan, Confirmation Order, and Other Matter Relevant to Transfer Decision of Passthrough Investors, Dkt. # 2168.

[11] Minute Entry dated Sept. 21, 2010, Dkt. # 2959.

underlying facts, were available and expressly litigated on in the Declaratory Judgment Action, the Clarification Motion, and in the Allocation Model.

Count Six, Non-Disclosure, alleges Defendants breached their duty to disclose "the default of the Exit Financing," "ML Manager's dire financial situation," "the existence of the Forbearance Agreement," and "Defendants' motives in seeking sales." These issues, and underlying facts, have been previously raised and addressed by this Court at every opportunity where the alleged nondisclosures could have caused any harm to Plaintiffs, such as in the individual sale orders and in the Allocation Model.

Count Seven, Civil Conspiracy, alleges that Defendants engaged in "a systematic strategy designed to conceal material information . . . until sufficient proceeds of "fire sales" could be raised to repay the Exit Financing under the secret Forbearance Agreement." This relies on the same facts discussed in connection with Count Six above.

Count Eight, Breach of Covenant of Good Faith and Fair Dealing, alleges that ML Manager acted in bad faith under "the agreements" because they were "armed with the declaratory judgment." This issue and its underlying facts were already litigated in both the individual Sale Orders and in the Declaratory Judgment Action. Further, Plaintiffs re-allege the same facts as Count Six for non-disclosure, discussed above.

Count Nine, Aiding and Abetting, relies on facts of other Counts, but substitutes Agents of ML Manager as the exclusive Defendant. Thus, this is dealt with above.

Plaintiffs also argue that most of the referenced previous litigation occurred in the context of contested matters (governed by Bankruptcy Rule 9014), instead of in the context of an adversary proceeding (governed by Bankruptcy Rules 7001-7087). But Plaintiffs fail to provide any argument or authority demonstrating that the context of a contested matter somehow deprived them of a full and fair opportunity to litigate, or deprived them of a final judgment on the merits, so as to render issue preclusion inapplicable.[12] Indeed, Bankruptcy

---

[12] Pursuant to Fed.R.Bankr.P. 3020(b) ("An objection to confirmation is governed by Rule 9014"), 7001, and 9014, confirmation of plans and hearings on objections to confirmation are contested matters, and yet are entitled to res judicata effect. *Wash. Mut. Bank v. Enewally (In re Enewally),* 368

8

Rule 9014(c) specifically makes almost all of the rules and procedures governing adversary proceedings applicable in contested matters.

Accordingly, this Court grants the motion to dismiss Counts One, Two, Three, Six, Seven, Eight, and Nine, on grounds of issue preclusion.

## IV.    Quasi-Judicial Immunity

Anglo-American common law has long recognized judicial immunity for acts performed by judges that relate to the "judicial process."[13] This immunity extends to non-judicial officers for "all claims relating to judicial functions."[14] How far it extends is quite broad and includes a wide diversity of non-judicial officers including:

> military and naval officers in exercising their authority to order courts-martial . . . to grand and petit jurors in the discharge of their duties as such; to assessors upon whom is imposed the duty of valuing property for the purpose of a levy of taxes; to commissioners appointed to appraise damages when property is taken under the right of eminent domain; to officers empowered to lay out, alter, and discontinue highways; to highway officers in deciding that a person claiming exemption from a road tax is not in fact exempt, or that one arrested is in default for not having worked out the assessment; to members of a township board in deciding upon the allowance of claims; to arbitrators, and to the collector of customs in exercising his authority to sell perishable property, and in fixing upon the time for notice of sale.[15]

It can even include grand jurors, petit jurors, advocates, and witnesses.[16] And court reporters.[17]

---

F.3d 1165, 1173 (9th Cir. 2004) ("[C]onfirmed plans are res judicata to issues therein"); *accord., United Student Aid Funds, Inc. v Espinosa,* 130 S.Ct. 1367, 1380 (2010*)* ("Where . . . a party is notified of a plan's contents and fails to object to confirmation of the plan before the time for appeal expires, that party has been afforded a full and fair opportunity to litigate").

[13] *Curry v. Castillo (In re Castillo),* 297 F.3d 940, 947 (9th Cir. 2002), citing *Forrester v. White,* 484 U.S. 219, 225 (1988); *Imbler v. Pachtman,* 424 U.S. 409, 423 n.20 (1976).

[14] *Id*. at 947-948, citing *Burns v. Reed,* 500 U.S. 478, 499 (1991) (Scalia, J., concurring in part and dissenting in part).

[15] *Id.*, citing *Burns*, at 499–500, (quoting T. COOLEY, LAW OF TORTS 410–11 (1880)).

[16] *Id.* at 948, citing *Butz v. Economou,* 438 U.S. 478, 509 (1978); *Burns*, at 489–90.

[17] *Antoine v. Byers & Anderson, Inc.,* 950 F.2d 1471, 1476 (9th Cir.1991), rev'd 508 U.S. 429 (1993).

A non-judicial officer is entitled to quasi-judicial immunity if: (1) the individual has, under common law, been historically afforded immunity and the public interest behind it supports such immunity; and (2) the individual's function is within the scope of that immunity.[18]

For bankruptcy trustees, issue (1) has already been decided by the Ninth Circuit: a trustee has, historically under common law, been afforded immunity.[19] The public interest or policy rationale for immunity is, as Judge Learned Hand noted, "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." [20]

Issue (2) requires a case-by-case analysis comparing the ultimate function to the scope of authority granted for the individual. For bankruptcy trustees, some guidance exists in case law for issue (2). Specifically, for quasi-judicial immunity, the defendant must satisfy the four elements of the *Bennett* test:

1. The defendant's acts were within the scope of his authority,

2. The plaintiff had notice of the proposed acts,

3. The defendant candidly disclosed the proposed acts to the bankruptcy court, and

4. The bankruptcy court approved the acts.[21]

---

[18] *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993); subsequently cited by *Castillo*, 297 F.3d at 946-953; *SMB Group, Inc. v. Diamond (In re SMB Group*, Inc.), No. CC-11-1610, 2012 WL 5419275, at *9-11 (9th Cir. BAP Nov. 7, 2012); *Nilsen v. Neilson (In re Cedar Funding, Inc.)*, 419 B.R. 807, 821-823 (9th Cir. BAP 2009).

[19] *Castillo,* 297 F.3d at 946-953, subsequently cited in both *Cedar Funding*, 419 B.R. at 821-823, and *In re SMB Group*, 2012 WL 5419275, at *9-11.

[20] *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949); subsequently cited by *Read v. Duck (In re Jacksen),* 105 B.R. 542, 544-546 (9th Cir. BAP 1989).

[21] *Bennett v. Williams*, 892 F.2d 822 (9th Cir.1989), slightly reframed by *Harris v. Wittman (In re Harris),* 590 F.3d 730, 742-744 (9th Cir. 2009).

Here, the parties' arguments ultimately are a battle over issue (2). More specifically, within issue (2), the main disagreement arises from the identification of the proper *act* and comparing it to the *scope of authority* conferred under element (1).

The Defendants argue that ML Manager, acting under the authority of the Liquidating Trustee and specifically conferred by the Bankruptcy Court pursuant to the Plan, is entitled to quasi-judicial immunity for their actions taken to implement that Plan. In response, the Plaintiffs make four arguments:

(1)     The Defendants are not the "Trustee" because ML Manager was a management company hired by the Trustee, and thus cannot receive quasi-judicial immunity because the scope of authority conferred is limited to Trustees;

(2)     The Defendants acted outside the scope of their authority because post-confirmation actions do not administer a bankruptcy estate;

(3)     The Defendants (other than ML Manager) acted outside the scope of their authority because only ML Manager would be entitled to quasi-judicial immunity; and

(4)     The Defendants committed acts outside the scope of their authority (including intentional/negligent conduct).

These arguments will be addressed in turn.

What is not really contested by the Plaintiff are the second, third, and fourth elements of the *Bennett* test: (2) notice to plaintiff; (3) candid disclosure to the court; and (4) court approval. All potential arguments the Plaintiffs have attempted to raise with respect to any of these elements flow from incorrectly identifying the ultimate act. For example, in arguing that the Plaintiffs lacked notice of ML Manager's specific methods or reasons for selling assets, the ultimate act is really the act to liquidate, of which the Plaintiffs indisputably had notice. This question, identification, is dealt with below in discussing scope of authority. Similar arguments could be made about candid disclosure or court approval, but they also rely on incorrectly identifying the ultimate act.

Case 2:12-ap-01849-RJH    Doc 59    Filed 03/28/13    Entered 03/29/13 07:54:02    Desc
Main Document - Motion to Dismiss Complaint    Page 11 of 34

1      Identification issues aside, the Defendant easily meets the last three elements of the

2  *Bennett* test. First, the Plaintiffs had notice.  This element is not contested in Plaintiffs'

3  memoranda, as many of the underlying objections were unsuccessfully raised as objections to

4  confirmation of the Plan. Second, the Trustee's agent acted candidly.  This element is not

5  contested, as the Plaintiffs were in no way blindsided by the Trustee's actions; nor did the

6  Trustee hide the authority of ML Manager to liquidate.  Again, one need look no further than

7  the confirmed Plan.  Finally, the Bankruptcy Court approved ML Manager's acts to liquidate

8  the assets and administer other aspects of the estate, most important to obtain exit financing and

9  to allocate it to the respective assets being liquidated.

10      Thus, ML Manager meets three of the four elements necessary for quasi-judicial

11  immunity. The only real issue is whether ML Manager is the functional equivalent of a trustee

12  who was accorded judicial or quasi-judicial immunity under the common law.

13      The Plaintiffs initially argue that ML Manager is not a bankruptcy trustee per se, so any

14  Ninth Circuit law on trustee immunity and scope of authority does not apply.  Such an

15  argument interprets "trustee" far too narrowly.  Rather, "trustee" includes any individual who

16  performs duties functionally equivalent to a bankruptcy trustee.[22]  The standard for

17  "functionally equivalent," although not precisely defined, is rather broad.[23]  For analogous non-

18  bankruptcy proceedings, the interpretation of "functionally equivalent" has also been quite

19  broad for analogous judicial functions.[24]  Moreover, when determining what act of an

20
21      [22] *Harris*, 590 F.3d at 742-744; *Beck v. Fort James (In re Crown Vantage, Inc.)*, 421 F.3d 963, 970-977(9th Cir. 2005).

22      [23]  *Harris*, 590 F.3d at 742-744 (trustee and unsecured creditor assigned special
representative/attorney to prosecute fraudulent conveyance adversary proceeding); *Fort James*, 421 F.3d at
23  970-977 (liquidating trustee); *Balser v. U.S. Trustee*, 327 F.3d 903, 909-911 (9th Cir. 2003) (US Trustee
assigned duties of trustee). *But see Bennett*, 892 F.2d at 823-825 (Chapter 11 trustee but not management
24  company appointed by trustee).

25      [24] *Swift v. Cal.*, 384 F.3d 1184, 1188-1189 (9th Cir. 2004) (State Parole Officers); *Miller v. Gammie*,
335 F.3d 889, 895-899 (9th Cir. 2003) (State social workers performing prosecutorial roles); *Atkinson-Baker*
26  *& Assocs., Inc. v. Kolts*, 7 F.3d 1452, 1454-1455 (9th Cir. 1993) (Special Master appointed by District Judge
to oversee pretrial discovery); *New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1302-1305 (9th Cir.
27  1989) (Court appointed receiver in divorce proceedings).

28

individual is functionally equivalent, the Court examines the *ultimate* act, and does not nit-pick

the individual constitutive parts. [25]

The closest case on the facts is *Bennett*.[26]  There, the debtor filed a voluntary

bankruptcy case under Chapter 11. A trustee was appointed, who hired Pro Management, Inc.

to manage the debtor's estate.  Eventually the case was dismissed. Unhappy with the result, the

debtor sued the trustee and Pro Management in state court, alleging breach of fiduciary duty,

breach of contract and warranty, negligence, conversion, accounting, and fraud. The debtor

argued that (1) the trustee failed to disclose the Pro Management was not state licensed, (2) no

notice was given of Pro Management's selection, and (3) the trustee negligently supervised Pro

Management.  The case was removed to bankruptcy court.  There, the Defendants moved to

dismiss just the trustee under quasi-judicial immunity.  The bankruptcy and district courts

agreed,  and the Ninth Circuit affirmed.

In discussing scope of authority, the Ninth Circuit noted the proper lens to evaluate

specific acts is not those specific acts, but rather the ultimate act from which those specific acts

arise.[27] Thus, the proper lens in determining scope of authority was not the specific act of

negligently hiring Pro Management, but rather the ultimate act consisting of the trustee's

management of the estate.  Accordingly, this ultimate act was within the scope of authority

because "liability will not be imposed for mistakes in business judgment."[28]

---

[25] *Castillo,* 297 F.3d at 946-953 (individual negligence in forgetting to send out proper notice by Trustee were part of ultimate act of scheduling and notice of hearing authority of Judge, thus entitled to quasi-judicial immunity); *Cedar Funding,* 419 B.R. at821-823 (individual libel and slander by trustee was part of ultimate act of communicating with Creditors, thus entitled to quasi-judicial immunity).

[26] *Bennett,* 892 F.2d at 823-825.

[27] *Id.*

[28] *Id.* at 824-825, citing *Sw. Media Inc. v. Rau,* 708 F.2d 419 (9th Cir.1983); *Hall v. Perry (In re Cochise College Park, Inc.)*, 703 F.2d 1339, 1357 (9th Cir.1983).

13

At the end of the decision, the court noted that the motion to dismiss was limited to the trustee, and did not extend to the management company he hired.[29] However, the court did not hold that the management company was not entitled to quasi-judicial immunity, but instead held that the trustee was entitled to immunity, leaving undecided the specific question of the management company's possible immunity.

On that issue, the case that is more on point is *Harris*.[30] There, the debtor filed a voluntary bankruptcy case under chapter 7. A trustee was appointed, who assigned an unsecured creditor as a special representative granting them (and their attorney) the right to prosecute a state law fraudulent conveyance adversary proceeding. The unsecured creditor was given 68% of the net recovery, plus attorney fees and costs. Later in settlement of this debt, the unsecured creditor was given the debtor's 1957 Mercedes-Benz and the alpine property. Three years later, the Debtor sued the trustee, the unsecured creditor, and their attorneys in state court, alleging breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and constructive fraud. The case was removed to bankruptcy court. There, the defendants moved to dismiss all defendants under quasi-judicial immunity. The bankruptcy and district courts agreed, and the Ninth Circuit affirmed.

In discussing scope of authority, the *Harris* court reasoned that the defendants' claims against the estate for costs and fees associated with the fraudulent conveyance proceeding were within the scope of the authority because they derived from the ultimate act of a trustee's assignment agreement, which was approved by the bankruptcy court. Thus, the Ninth Circuit held in *Harris* that even agents of the trustee can enjoy quasi-judicial immunity for acts that are functionally equivalent to a Trustee's acts.[31]

Here, the Court confirmed a plan to assign a ML Manager to fulfill some roles of the Liquidating Trustee to collect estate assets, liquidate them, and distribute the proceeds. This

---

[29] *Id.* at 825 ("Bennett is not remediless, for he retains his action against Pro Management in state court.").

[30] *Harris v. Wittman (In re Harris),* 590 F.3d 730, 742-744 (9th Cir. 2009).

[31] *Id.*

14

was within the statutory scope of authority for the Court to confer.[32] ML Manager performed the obligations and service enumerated by the Plan. This implementation of the delegated judicial act is also within the agent's statutory scope of authority to perform.[33] Pursuant to this authority, and in the Plan itself, the Liquidating Trustee assigned the rights to ML Manager to liquidate the business accordingly. More specifically, the Liquidating Trustee assigned rights to procure exit financing and administer all legal claims of the Debtor. Thus, for the ultimate act of liquidating the estate, ML Manager acted within the scope of the authority granted to them by the Plan and the Court, all of which were the functional equivalent of a trustee's duties and authority. Just like the trustee in *Harris* assigning to a third party the duty to fulfill a trustee's role, the Court and the Plan here assigned ML Manager the right and duty to liquidate the Debtor's business.

While some individual acts pled in the Complaint may be a few steps removed from ML Manager's "management," the Ninth Circuit law of quasi-judicial immunity looks only to the ultimate act, i.e. the implementation of the Plan plus the liquidating trustee's power to liquidate, to determine the scope of authority conferred. And this operation was within the scope of authority conferred. Like the Court in *Harris* identifying a trustee assignment agreement approved by the Bankruptcy Court to determine what was conferred, this Court need look no further than the confirmed Plan to determine that the Court conferred the authority to liquidate and wind-down the debtor's business.[34] Thus, ML Manager also meets the last element necessary for quasi-judicial immunity.

The Plaintiffs next argue that ML Manager's post-confirmation acts do not enjoy quasi-judicial immunity because after confirmation, the bankruptcy estate no longer exists. Thus, any actions by ML Manager post-confirmation are outside the scope of the authority conferred

---

[32] 11 U.S.C. § 1142(b).

[33] 11 U.S.C. § 1142(a).

[34] Confirmed Plan, Article 4.12 (Creation and Governance of ML Manager LLC); Confirmed Plan, Article 4.3 (Preservation of Debtor's Claims, Demands, Avoidance Actions And Causes Of Action); Confirmed Plan, Article 4.15 (Financing the Plan and Operations).

15

(because there is no longer any authority conferred). The Plaintiffs cite *Hillis Motors* for the
simple proposition that the bankruptcy estate ceases to exist upon confirmation of the plan.[35]
What the Plaintiffs fail to mention is that the court in *Hillis* specifically declines to follow that
simple proposition and extended the bankruptcy estate's existence post-confirmation for a
trustee who had post-confirmation obligations that the bankruptcy court oversaw.[36]

A better case is *Fort James*.[37] There, the debtor filed a voluntary case under Chapter 11.
A Plan was confirmed, in which a liquidating trustee was appointed to liquidate the trust,
administer fraudulent conveyance actions, and distribute the proceeds. After the plan was
confirmed, the liquidating trustee brought a fraudulent conveyance action over the creation of
the debtor by a former parent company. The former parent company sought a declaratory
judgment in Delaware Chancery Court that that action was barred by a settlement agreement
executed between the parties. The trustee removed to bankruptcy court, arguing the *Barton*
doctrine vested exclusive jurisdiction in the appointing court.[38] The former parent company
argued to the bankruptcy court and to the Ninth Circuit that the *Barton* doctrine does not apply,
in part because the bankruptcy estate ceased to exist post-confirmation, along with the
bankruptcy court's jurisdiction and immunity.

The Ninth Circuit held that the *Barton* doctrine did apply.[39] The Court extended the
reasoning adopted by the First Circuit in *Muratore* that "the doctrine serves additional purposes
even after the bankruptcy case has been closed and the assets are no longer in the trustee's
hands."[40] This is because post-confirmation immunity is a vehicle to ensure the effective

---

[35] *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 589-590 (9th Cir. 1993).

[36] *Id.*

[37] *Beck v. Fort James (In re Crown Vantage, Inc.),* 421 F.3d 963, 970-977(9th Cir. 2005).

[38] *Id.*

[39] *Id.*

[40] *Fort James*, 421 F.3d at 972, citing *Muratore v. Darr,* 375 F.3d 140, 147 (1st Cir.2004).

administration of the Estate both pre- and post-confirmation.[41] Citing Judge Posner's reasoning by the Seventh Circuit in *Linton*, the Court noted:

> [A] trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code. If he is burdened with having to defend against suits by litigants disappointed by his actions on the court's behalf, his work for the court will be impeded.[42]

This rationale does not go away post-confirmation, as post-confirmation actions can have a deterrent effect on the pre-confirmation administration of the estate:

> Without the [Barton] requirement, trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern).[43]

The Court further reasoned that technically, better than *Linton* and *Murator*, the estate was not even closed because the bankruptcy court, under the confirmed plan, still retained jurisdiction over actions relating to the liquidating trustee.[44]

Here, the facts closely parallel the facts and rationale of *Fort James*. The Plaintiffs are seeking to sue the agent of the Liquidating Trustee for actions that occurred pursuant to the administration of the estate. Judge Posner's reasoning is illustrative: If this Court were to impose liability, it would have a deterrent effect on liquidating trustees (and their agents) because it would penalize them for decisions taken during the course of implementing a confirmed plan that creates a liquidating trust. It would drive up the cost of administration, resulting in less quality trustees to administer the estate. Further, as in *Fort James*, here the Court retained exclusive jurisdiction over the Liquidating Trustee under the confirmed Plan, so the estate was not closed and the Court retained jurisdiction.[45]

---

[41] *Id.*

[42] *In re Linton,* 136 F.3d 544 (7th Cir. 1998); subsequently cited in *Fort James*, 421 F.3d at 970-977.

[43] *Id.*

[44] *Id.*

[45] Confirmed Plan, Article 9.1 (Jurisdiction of Bankruptcy Court).

17

At oral argument, the argument was made that *Fort James* is explicitly and only about the *Barton* doctrine. However, this Court believes the analysis and reasoning dovetails nicely for quasi-judicial immunity. First, *Fort James* itself noted that one factor for whether to apply the *Barton* doctrine is whether the trustee is entitled to quasi-judicial immunity.[46] Thus, because the rationale overlaps significantly, the analysis persuasively applies for quasi-judicial immunity. Second, even if *Fort James* is not binding for quasi-judicial immunity, it offers persuasive reasoning in favor of extending immunity post-confirmation. And the Plaintiffs do not offer any contrary authority. The two cases they cite in their supplemental citations miss the point entirely. The first, *Medical Developments International,* rules on a statutory exception to *Barton* for receivers not applicable here, and explicitly distinguishes its ruling as not applying to liquidating trustees, who are entitled to the *Barton* doctrine.[47] The second, *In re WRT Energy Corp.,* is a bankruptcy court decision from the Western District of Louisiana, and in fact did hold that *Barton* doctrine applied to a liquidating trustee, but in applying the *Barton* doctrine, granted remand because the court lacked jurisdiction.[48] Further, the liquidating trustee's powers were quite limited, a key factor in denying jurisdiction over post-confirmation acts not present here.[49]

The Court therefore concludes that quasi-judicial immunity does not automatically end at plan confirmation, but may extend beyond confirmation for the purposes of implementing a plan that creates a liquidating trust.

---

[46] *Fort James*, 421 F.3d at 976-977.

[47] *Med. Dev. Int'l v. Cal. Dept. of Corr. & Rehab.,* 585 F.3d 1211, 1217-1218 (9th 2009) ("Our cases analyzing the interplay between the Barton rule and § 959(a) have most often involved bankruptcy trustees, and "the policies underlying the *Barton* doctrine apply with greater force to bankruptcy proceedings than to other proceedings involving receivers." … Moreover, many of these cases have dealt with a liquidating trustee…, a circumstance in which … the Barton rule should apply…").

[48] *In re WRT Energy Corp.,* 402 B.R. 717, 723 (Bankr.W.D.La. 2007) ("the court finds the Ninth Circuit's reasoning in *Crown Vantage* persuasive, and concludes that, as a general matter, the *Barton* doctrine applies to liquidating trustees appointed pursuant to a confirmed plan of reorganization.").

[49] *Id.* at 724-728.

Case 2:12-ap-01849-RJH    Doc 59    Filed 03/28/13    Entered 03/29/13 07:54:02    Desc
Main Document - Motion to Dismiss Complaint    Page 18 of 34

The Plaintiffs finally argue, in passing, that even if ML Manager is immune from liability, such immunity does not extend to agents of ML Manager. The argument was made "in passing" because that single sentence provides more depth than the Defendant ever provided themselves.[50] If immunity extends beyond the trustee to agents of the trustee, it follows that immunity can also extend to sub-agents of that agent. This immunity is circumscribed by the same scope of authority test that limits that original extension. Thus, for discretionary acts of a sub-agent, that sub-agent is entitled to immunity as long as they also meet the four-element *Bennett* test. Otherwise, it would do little to the doctrine to hold ML Manager immune, but its principal board members and chief employees liable, because the deterrent effect of discretionary trustee acts would still exist so long as either party is held liable.

One may argue that the Bankruptcy Court only approved ML Managers actions, but not the acts of the specific employees/board members. However, such argument ignores the fundamental reality that ML Manager is a fictitious entity that can only act through its board members/employees. Further, the Bankruptcy Court was not oblivious to this inherent delegation, as it expressly approved ML Manager's creation and hiring of employees to perform their duties.[51] Thus, ML Manager's quasi-judicial immunity extends to the other parties named in the Complaint, including board members and principal employees.

The Plaintiffs next argue that ML Manager acted in excess of its authority, thus falling within an age-old exception to quasi-judicial immunity for intentional/negligent misconduct by the Trustee.[52] One recent BAP decision draws the line between "reasonable mistakes" and "intentional/negligent acts" accordingly:

---

[50] Plaintiffs' Opposition To Defendants' Motion To Dismiss, 6 ("A preposterous argument made by Defendants in section II of the Motion is that all of the claims against all of the Defendants must be dismissed as a matter of law because they all have been anointed with "quasi-judicial immunity.").

[51] Official Committee Of Investors' First Amended Plan Of Reorganization, Article 4.12 (Creation and Governance of ML Manager LLC) (ML Manager is empowered to "enter into independent contracts, hire one or more professional asset managers or companies, contract with a servicing agent, employ counsel and other professionals, among other things.").

[52] *Cochise College Park,* 703 F.2d at 1357-1361.

19

As an officer of the court, the trustee is entitled to a form of derivative judicial immunity from liability for actions carried out within the scope of the trustee's official duties. A trustee is entitled to such immunity only if the trustee is acting within the scope of authority conferred upon the trustee by the appropriate statute(s) or the court. While a trustee is allowed to make reasonable mistakes where discretion is allowed, a trustee may be sued for intentional or negligent actions which amount to violations of the duties imposed upon the trustee by law.[53]

Accordingly, mistakes in business judgment by the Trustee are immune from liability.[54] While textually clear, the line between business mistake and negligent/intentional dereliction of duty is functionally quite blurred and is thus largely a case-by-case analysis chained to the facts of the case.

A few notes from case law exist to shape this rule. First, one overarching theme is the breadth of the immunity extends to acts not explicitly forbidden by the Code that tangentially implement a Trustee duty.[55] What seems to make the difference is the degree of specificity of

---

[53] *Naert v. Daff (In re Wash. Trust Deed Serv. Corp.),* 224 B.R. 109, 112-113 (9th Cir. BAP 1998); citing *Kashani v. Fulton (In re Kashani),* 190 B.R. 875, 883-884 (9th Cir. BAP 1995).

[54] *Bennett,* 892 F.2d at 823-825; citing *Sw. Media,* 708 F.2d 419; *Cochise College Park,* 703 F.2d at 1357-1361.

[55] *See Mosser v. Darrow*, 341 U.S. 267, 268-275 (1951) (Under the Act, **no immunity** when trustee did not disclose to the court that it permitted key employees to profit from trading securities of the debtors' subsidiaries); *Harris*, 590 F.3d at 742-744 (**immunity** when trustee breaches prior settlement agreement by allowing unsecured creditor attorney fees for fraudulent conveyance action assigned to them by trustee); *Balser*, 327 F.3d at 909-911 (**immunity** when trustee appoints friendly examiner and fraudulently/negligently sold 10 properties below market value to a friend); *Castillo*, 297 F.3d at 946-953 (**immunity** when trustee fails to schedule/provide notice for a bankruptcy hearing); *U.S. v. Hemmen*, 51 F.3d 883, 891-892 (9th Cir. 1995) (**no immunity** when trustee fails to honor known prior IRS tax levy); *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1386-1387 (9th Cir. 1994) (**no equitable tolling** because trustee did not act diligently in the discovery of voidable transfers, noting trustee would be personally liable for damages); *Bennett*, 892 F.2d at 823-825 (**immunity** when agent of trustee fails to disclose agent was unlicensed and when trustee negligently supervises agent); *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1390-1394 (9th Cir. 1987) (**immunity** when trustee refuses to enforce statutory obligations, refuses to acknowledge lost bankruptcy court jurisdiction, files motion to appoint guardian ad litem against debtor, and ex parte communication with judge); *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1096-1097 (9th Cir. 1986) (**immunity** when trustee commits "wrongful acts" in operating the debtor's farm); *Rigden v. Aldrich (In re Rigden)*, 795 F.2d 727, 730-733 (9th Cir. 1986) (**no immunity** when trustee breached fiduciary duty by not failing to enforce redemption rights); *Cochise College Park*, 703 F.2d at 1357-1361 (under the Act, **no immunity** when trustee failed to affirmatively reject executory contracts and induced future payments to the estate by fraud and misrepresentation); *Sw. Media*, 708 F.2d 419 (under the Act, **immunity** when trustee breached fiduciary duty to sell property free and clear to increase the commissions paid to the trustee in administering the estate); *Leonard v. Vrooman*, 383 F.2d 556 (9th Cir. 1967) (Under the Act, **no immunity** when trustee illegally seizes and refuses to turnover non-estate property without filing

the duty identified, and trustee acts taken.  Second, while intentional acts are exempt from quasi-judicial immunity, recent Ninth Circuit decisions suggest negligent acts may not be.[56] Finally, "business mistake" is not the same as the business judgment rule.[57]

Neither party has substantively argued over specific acts.  Both sides focused more on an "all or nothing" approach.[58]  Thus, the Defendants claim every specific act identified is immune because they were generally part of the authority conferred; while the Plaintiffs claim every specific legal conclusion identified (of which they named a handful of specific acts) is outside the scope of authority conferred because it was illegal, as per the specific legal conclusion identified. Thus, both parties relied on their somewhat circular generalizations rather than actually wade through the dirty work evaluating the specific acts pled in the Complaint. Because it is impossible to rule one way or another without doing some of this work, and

---

proper fraudulent conveyance adversarial proceeding); *SMB Group*, 2012 WL 5419275, at *9-11 (**immunity** when trustee does not turnover property to debtor that is not part of the estate); *Tevis v. Hoseit (In re Tevis)*, 2011 WL 7145712, at *11-12 (9th Cir. BAP 2011) (**immunity** when trustee misrepresents compromise motion and "knowingly, deliberately, [and] willfully committed fraud upon the court to sell [debtors'] residence"); *Cedar Funding*, 419 B.R. at 821-823 (**immunity** when trustee slanders debtor in possession by disclosing alleged facts of fraud to creditors and posting rebuttal letter about lack of assets and excessive debt); Wash. Trust Deed Serv., 224 B.R. at 112-113 (**immunity** when trustee fraudulent misled party of interest about settlement agreement for an avoidance action); *Kowalski-Schmidt v. Forsch (In re Giordano)*, 212 B.R. 617 (9th Cir. BAP 1997) (**immunity** when trustee improperly investigates, negotiates, and enters into a settlement, which the court ultimately approves).

[56] *See SMB Group*, 2012 WL 5419275, at * 10, n.12 ("Although the Ninth Circuit has held that trustees are not immune for their negligent violation of duties imposed by . . . , it has subsequently held that trustees are not liable for negligent acts when immunity applies."), citing *Castillo*, 297 F.3d at 946-953 ("Because we decide that [the trustee] is entitled to immunity, we need not reach Castillo's argument that bankruptcy trustees may be liable for negligence."). *Cf., Cochise College Park,* 703 F.2d at 1357-1358, n.26 ("We reject the approach of the Tenth and Sixth Circuits which, in an apparent misreading of the seminal case of *Mosser* . . . , have concluded that a bankruptcy or reorganization trustee may be held personally liable for damages only for injuries arising from intentional-as opposed to negligent-conduct.").

[57] *Rigden v. Aldrich (In re Rigden)*, 795 F.2d 727, 730-733 (9th Cir. 1986) (criticizing dissent's view that business judgment rule guides corporate managers immunity in Bankruptcy; noting that while the rationale for both are similar, "outside the scope of authority" in quasi-judicial immunity is based on traditional standards of "reasonable care" and "due diligence", and not the business judgment rule.).

[58] This may be specific evidence proving the lack of depth that results from shotgun pleading, as discussed below.

21

because this Court is familiar with the underlying specific facts, this Court must undertake that analysis to make an informed decision.

Generally, given the discussion above, ML Manager was properly conferred the authority to liquidate, distribute proceeds, secure exit financing, administer legal claims, etc. of the Liquidating Trustee. In determining whether ML Manager's acts were outside the scope of authority, this Court looks to the ultimate act of the agent, not the specific acts themselves or legal conclusions that follow from those specific acts. Thus, the analysis that follows derives not from the legal conclusions or what the Plan says, but rather identifying whether the specific acts can be attributable to the ultimate act of implementation or not. The standard for determining this is, as noted above, "reasonable care" and "due diligence" excusing business mistakes in discretionary judgment. Thus, to defeat the defense of "discretionary business mistake", the Plaintiff must point to a specific (*i.e.* Plan says do X, agent did not do X) or a general (*i.e.* a reasonably prudent trustee would do X, agent did not do X or instead did Y) duty violated. The difference between a specific or general duty violated relates to the degree of deference given. Far more deference is given for the later violation, because there is no specific rule (or Plan requirement) that prohibits the trustee's action/omission.

Almost every act focused on by the Plaintiffs is of the latter variety (general duty). The Plaintiffs cannot point to anything but the most general parts of the Plan as proof of a specific duty violated. Inside this general duty violation, the Plaintiffs largely point to omissions rather than acts (*i.e.* Defendant did not do X). Generally, it is harder to prove that an omission exceeds delegated authority than does an act, because omissions are generally more discretionary. Without really ever doing the leg work to prove the necessary prerequisite, Plaintiffs thus argue what ML Manager did or did not do without pointing to any evidence of what a reasonably prudent trustee would have done. Thus, claims that ML Manager did not do X (such as a proper accounting, prepare minutes of meetings, operate to a given budget, disclose defaulting, appeal taxes, obtain independent legal counsel, allow Plaintiff input/control, file proper exit financing allocations, pay exit financing, disclose things or motives, sell

without a firesale, turnover property) lack any legal or factual claim that a reasonably prudent trustee would have done those things. Further, it is clear under the case law that such quibbles over the discretionary acts of the trustee are entitled to immunity in all but the most exceptional circumstances. The Plaintiff has failed to identify any of these exceptional circumstances. To hold the agent of the Trustee liable for these implementation acts would have a deterrent effect on the quality of the trustee's work, raising the transactions costs for effective administration of estates.

Thus, this Court holds that each of these acts/omissions were within the discretionary judgment of ML Manager's duty to implement the Plan, and at most amount to business mistakes in that implementation. All specific factual allegations in the individual Counts arose from the ultimate act of liquidating the estate assets, and are thus entitled to quasi-judicial immunity. They were not outside the scope of authority conferred.

Accordingly, the motion to dismiss is granted as to the following Counts: One, Two, Three, Five, Six, Seven, and Eight. Count Nine, Aiding and Abetting, is also dismissed in part to the extent that it relies on any of the dismissed Counts.

## V.    Rule 8

In Bankruptcy adversary proceedings pursuant to Bankruptcy Rule 7008, Rule 8 of the Federal Rules of Civil Procedure applies. Rule 8(a)(2) requires the complaint to be a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) elaborates that "each allegation must be simple, concise, and direct." The Supreme Court has interpreted "short and plain statement" to mean that the complaint must provide "the defendant [with] fair notice of what the . . . claim is and the *grounds upon which it rests*."[59] The degree of particularity required to provide fair notice of the complaint's grounds, although within a stable range, is greater for "complex commercial cases."[60]

---

[59] *Twombly*, 550 U.S. at 555, quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (emphasis added).

[60] *Starr v. Baca*, 652 F.3d 1202, 1212-1216 (9th Cir. 2011).

23

A "short and plain statement" is not violated per se by page length, verbosity, or ambiguity.[61] But a plethora of Ninth Circuit cases are quick to point out that excessive page length, verbosity, or ambiguity can rise to the extent necessary to deny the defendant fair notice of the grounds upon which the claim rests. [62]

To help add structure to such a fluid rule, other Circuits have adopted more stringent tests to categorize attorney practices that violate a "short and plain" requirement. One test is the "shotgun pleading rule", a favorite of Eleventh Circuit.[63] A "shotgun pleading" is a pleading that excessively prioritizes *breadth* over *depth*, such that the complaint is "so vague and ambiguous that [the defendants] [could] not reasonably be required to frame a responsive pleading."[64]

---

[61] *Hearns v. San Bernardino Police Dep't,* 530 F.3d 1124, 1131 (9th Cir.2008).

[62] *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-1059 (9th Cir. 2011) (**not "short and plain"** when plaintiffs submits a 733 page amended pleading); *Oliver v. Ralphs Grocery Co.,* 654 F.3d 903, 908-909 (9th Cir. 2011) (**not "short and plain"** when plaintiff does not plead sufficient facts, and relies on the expert report for such particularity); *McHenry v. Renne*, 84 F.3d 1172, 1177-1180 (9th Cir. 1996) (**not "short and plain"** when plaintiff complaint is "argumentative, prolix, replete with redundancy, and largely irrelevant", "consists largely of immaterial background information", and is "written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs"); *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541 (9th Cir.1994) (**not "short and plain"** when plaintiff's complaint is "unwieldy in the extreme. It is 113 pages long, and often rambles through long stretches of material quoted from defendants' public statements (many of which seem innocuous enough even by plaintiffs' recounting) unpunctuated by any specific "reasons for falsity"-which, indeed, prove difficult to locate in the surrounding area", reasoning "[a] complaint is not a puzzle … and we are loathe to allow plaintiffs to tax defendants, against whom they have leveled very serious charges, with the burden of solving puzzles in addition to the burden of formulating an answer to their complaint."); *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 415 (9th Cir. 1985) (**not "short and plain"** when plaintiff's complaint (including attachments) exceeded "70 pages in length, were confusing and conclusory"); *Schmidt v. Herrmann,* 614 F.2d 1221, 1223-1224 (9th Cir. 1980) (**not "short and plain"** when plaintiff's complaint was 30 pages without distinguishing cause of action, and was "confusing, distracting, ambiguous, and unintelligible …" in presentation).

[63] *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979-984 (11th Cir. 2008) ("The complaint is a model "shotgun" pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.… [S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times.").

[64] *Byrne v. Nezhat,* 261 F.3d 1075, 1128-1132 (11th Cir. 2001).

24

A "shotgun pleading" can take two forms. First, it can happen when one party pleads *multiple parties* did an act, without identifying which party did what specifically.[65] Second, it can happen when one party pleads multiple counts, and does not identify which specific facts fit that Count *in that very Count,* but instead rely on a blanket incorporation clause that incorporates *all* of the statement of facts. [66]

The rationale for disallowing shotgun pleadings is best described in *Davis.* [67] In *Davis,* the plaintiff filed a "model shotgun pleading." The defendant responded in kind with a shotgun answer. The District Court continued the dance during summary judgment, resulting in a shotgun decision that failed to resolve many issues. The Eleventh Circuit, in reversing the district court, expressed strong hostility to the method in which the parties framed their pleadings. In ruling that the Plaintiff's pleading was not a "short and plain statement," the Court offered at least four distinct reasons against shotgun pleadings in general:

> The unacceptable consequences of shotgun pleading are many. **First**, and perhaps foremost, shotgun pleading inexorably broadens the scope of discovery, much of which may be unnecessary. Who benefits from that? Certainly not the defendant, especially if it compensates its counsel by the hour. Certainly not the plaintiff-unless his lawyer is trying to attach some value to a frivolous claim. In time, the defendant will ask: "when is all of this to end?" Unless the court has intervened and required the attorneys to replead the case, unless the court has definitively identified the parties' claims and defenses and has squeezed the case down to its bare essentials, defense counsel will be unable to give the client an accurate answer. Plaintiffs' counsel knows this, of course, and that the defendant will want out of the case, to settle. So, the case settles, and the shotgun complaint has performed its designed service. So has defense counsel's acceptance of the shotgun complaint as an appropriate pleading. As we have observed, Litigating a case framed by shotgun pleadings obviously harms one or both of the parties. Why, then, would a lawyer engage in shotgun pleading? Plaintiffs file shotgun complaints and include frivolous claims to extort the settlement of a meritorious claim; worse yet, they file shotgun complaints to extort the settlement of unmeritorious claims . . . . Extortion cuts both ways. Depending on his financial resources, a defendant may use a shotgun answer to obtain a settlement that waters down a meritorious claim. In either situation, the extorted

---

[65] *Destfino v. Reiswig,* 630 F.3d 952, 958-959 (9th Cir. 2011).

[66] *See e.g.*, *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273 (11th Cir. 2006); *Magluta v. Samples*, 256 F.3d 1282, 1284-1285 (11th Cir. 2001); *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 365-367(11th Cir.1996).

[67] *Davis,* 516 F.3d at 979-984.

25

settlement provides a financial benefit to the "prevailing" party and a windfall in the form of fees for the "prevailing" lawyer.[68]

**Second**, in addition to delaying a just disposition of the case at the undue expense of one or both of the parties, shotgun pleadings, if tolerated by the court, lessen the time and resources the court has available to reach and dispose of the cases and litigants waiting to be heard. This is especially harmful to those who have no other forum for the vindication of their rights.

**Third**, shotgun pleadings wreak havoc on appellate court dockets. The case at hand is Exhibit A. Due to the nebulous pleadings in this case and the district court's failure to strip the case down and identify each claim and defense, we had to undertake that task from scratch. The briefs and oral argument were of no use until we scoured the record-including the memoranda the parties gave the district court in support of or in opposition to CCBCC's motions for judgment on the pleadings and, subsequently, for summary judgment-to determine whether what the parties stated in their respective briefs was accurate.

The unvarnished truth is that this court puts no credence in briefs written against a backdrop of a case disposed of on shotgun pleadings. We sift through the record for anything that will corroborate a brief's representation; it is not until that task is finished that we look to the briefs for assistance-namely, to determine whether the appellant has preserved the issues its opening brief presents. In this case, after searching the record, we were able to discard much of it as pure waste and thus substantially reduce the length of this opinion. Had we not approached the appeal in this manner, there is no telling how many mistakes we might have made in identifying plaintiffs' claims, the district court's treatment of those claims, and the issues plaintiffs preserved for appeal.

**Fourth**, the mischief shotgun pleadings causes undermines the public's respect for the courts-the ability of the courts to process efficiently, economically, and fairly the business placed before them. At an increasing rate, civil litigants are avoiding the federal district courts; they go elsewhere, to other fora, for the resolution of their disputes, especially complicated commercial disputes. The district courts' civil caseloads reflect this. The contemporary litigation culture has effectively reduced the federal court civil dockets, nationwide. This is not surprising. The exponentially increasing transaction costs the parties must bear in order to resolve their civil disputes in the federal district courts is driving litigants away, especially those involved in complex commercial matters. This has a negative effect on the development of the rule of law in the federal courts. When issues that ought to be presented to the courts for clarification, and to stabilize the rule of law, are removed to non-judicial fora for resolution, the public bears the cost-in the form of more litigation and a judiciary unable to handle it. [69]

While there may be no explicit Ninth Circuit precedent explicitly holding that shotgun pleadings can violate a "short and plain" statement requirement, at least one case indirectly held

---

[68] *Id.*, at 979-984, citing *Byrne,* 261 F.3d at 1130.
[69] *Davis*, 516 F.3d at 979-984 (footnotes omitted).

that it did. [70] Further, many federal district judges in the Ninth Circuit have amply incorporated the substance of the shotgun pleading rule, whether referring to it explicitly or implicitly. [71] Finally, because of the fluid nature of previous Ninth Circuit rulings on "short and plain," it may be likely that previous decisions on excessive page length and ambiguity support a rationale quite similar to the one adopted against shotgun pleadings.

It is abundantly clear the Plaintiffs engaged in model shotgun pleading. First, *every* count includes the following introductory clause: "Plaintiffs repeat and reallege each and every allegation set forth in the paragraphs above as if fully set forth herein." Such Incorporation Clauses, in addition to the above reasons given above, further impede fair notice pleading by incorporating *generally* ("each and every"). Thus, the plain meaning of the clause is to include not only the Statement of Facts, but also every statement in prior counts. The Plaintiff must plead separate counts *separately*. Incorporation clauses are only allowed when either (a) they incorporate specifically (by page or paragraph); or (b) the statement of facts is so short and counts pled so limited as to make general incorporation harmless. The Plaintiffs did neither.

---

[70] *See Destfino v. Reiswig,* 630 F.3d 952, 958-959 (9th Cir. 2011) (upholding a district court dismissal *with prejudice* after plaintiff repeatedly plead "shotgun pleadings" based on pleading multiple defendants generally because "[p]laintiffs had three bites at the apple, and the court acted well within its discretion in disallowing a fourth").

[71] *See Zinzuwadia v. MERS,* No. 2:12–cv–02281–KJM–KJN PS, 2012 WL 6737837, at *6-8 (E.D. Cal. Dec. 28, 2012) (explicitly); *Manago v. Gonzalez,* No. 1:11–cv–01269–SMS PC., 2012 WL 6628902 (E.D. Cal., Dec. 19, 2012) (implicitly); *Kountze v. Kountze No.,* 12–cv–05079 NC, 2012 WL 5464618 (N.D. Cal., Nov. 8, 2012) (implicitly); *Fosbre v. Las Vegas Sands Corp.,* No. 2:10–CV–00765–KJD–LRL, 2012 WL 2848057 (D. Nev. July 11, 2012) (explicitly); *Raifman v. Wachovia Sec., LLC, No.* C 11–02885 SBA., 2012 WL 1611030 (N.D. Cal. May 8, 2012) (explicitly*); Ill. Nat. Ins. Co. v. Nordic PCL Const. Inc.,* 870 F.Supp.2d 1015, 1036-1038 (D.Haw. 2012) (explicitly); *Rashdan v. Geissberger,* No. C 10–00634 SBA, F.Supp.2d, 2011 WL 197957 (N.D. Cal. Jan. 14, 2011) (explicitly); *Stanislaus Food Prods. Co. v. USS-POSCO Indus.,* No. CV F 09-0560 LJO SMS, 2010 WL 3521979, 31 (E.D. Cal. Sept. 3, 2010) (explicitly); *Sollberger v. Wachovia Sec.,* LLC, No. SACV 09–0766 AG, F.Supp.2d, 2010 WL 2674456, (C.D. Cal., June 30, 2010) (explicitly); *Kim v. Quichocho,* 708 F.Supp.2d 1079 (D. N. Mar. I. 2010) (explicitly); *Mason v. County of Orange*, 251 F.R.D. 562, 563-564 (C.D. Cal. 2008) (explicitly); *In re Metro. Sec. Litig.,* 532 F.Supp.2d 1260 (E.D. Wash. 2007) (explicitly).

27

Second, nearly every paragraph of every Count of the Complaint before this Court pleads *"Defendants"* generally.[72] The only attempt to distinguish between Defendants is at the beginning of the Count where it specifies *All Defendants* (Counts I-VII), *ML Manager* (Count VIII) or *Defendants Except ML Manager* (Count IX). Except for Count VIII, this "fix" by itself is a form of shotgun pleading. While Count VIII is at least titled specifically, it still pleads generally quite often ("Defendants)[73]; and it also pleads to *other* Defendants generally ("other Defendants"; "ML Manager and Defendants proceeded")[74] By not identifying specific Defendants, Defendants are left guessing who did what, raising the transaction costs for discovery and future cooperation. This hurts not only the Defendants, but the Plaintiffs and the Court as well. Thus, the Plaintiff must plead *specific* Defendants did *specific* acts. The Plaintiff here did neither.

Third, Plaintiffs also use many proxy clauses that serve the purpose of incorporating parts of the Statement of Facts. The Plaintiffs use "without limitation,"[75] "such as,"[76] "as set forth above,"[77] "described herein,"[78] and "described above"[79] clauses. These clauses *generalize* the specific facts that follow to include facts *outside* those specific facts. Thus, any level of specificity offered is moot because it is expressly offers just *part* of the story, not the *whole* story sufficient to provide fair notice.

---

[72] State Court Complaint, Removed as Adversary No. 2:12-ap-01849-RJH, complaint attached as exhibit to Dkt. # 11, pp. 60-69 ("Complaint").

[73] *Id*. at 67-68.

[74] *Id.* at 67, ¶¶ 440, 442.

[75] *Id.* at 60, ¶ 385; 61, ¶ 385; 62 ¶ 393; 63, ¶ 40; and 68, ¶ 452.

[76] *Id.* at 61, ¶ 386.

[77] *Id.* at 61, ¶ 386; 63, ¶¶ 404, 405; 65, ¶ 418; 67, ¶ 434; and 68, ¶ 452, 452.

[78] *Id.* at 63, ¶ 401; 64, ¶ 414; and 68, ¶ 449.

[79] *Id.* at 69, ¶ 455.

Finally, Plaintiffs use numerous vague terms that seems to rely on information in the statement of facts for them to have any relevant interpretation. Examples include "undivided interests in REO Property,"[80] "systematic strategy,"[81] and "relevant agreements (to the extent they are applicable)."[82] These terms by themselves mean nothing *without* specific context provided somewhere in the statement of facts. Proper specificity in citation is required.

Taken together, the following facts stand out: (1) the complaint is 70 pages (60 pages making up the statement of facts), (2) the complaint has nine independent counts, and (3) the complaint uses a wide variety of shotgun pleading clauses and terms which vaguely incorporate unspecified parts of the statement of facts (or other counts) or leave unnamed specific Defendants. The end result is that the Plaintiffs hope that the Court will engage in a treasure hunt to find *which facts* line up with *which Counts*, an unduly burdensome task this Court does well to avoid. The shotgun pleading engaged in here does not provide the fair notice necessary to engender an adequate answer by the other party or a ruling by the court.

Accordingly, the motion to dismiss is granted for violation of Rule 8, with leave to amend except to the extent such Counts or portions thereof have been dismissed on grounds of res judicata and/or quasi-judicial immunity.

## VI. Rule 9

Rule 9 of the Federal Rules of Civil Procedure applies in adversary proceedings.[83] Rule 9(b) requires that if alleging fraud or mistake, the claim must also state "with particularity the circumstances constituting fraud or mistake."[84] In short, the Plaintiff must plead the "who, what, where, and how of the conduct charged, as well as what is false or misleading about the

---

[80] *Id.* at 63, ¶ 398.

[81] *Id.* at 66, ¶ 432.

[82] *Id.* at 67, ¶ 440.

[83] Bankruptcy Rule 7009 (citing F.R.Civ.P. Rule 9).

[84] *Id.*

29

purportedly fraudulent statement, and why it is false."[85] This particularity requirement does not apply to allegations of "[m]alice, intent, knowledge, and other conditions of a person's mind".[86] Although Rule 9 was not cited or briefed once by either party, the Court may dismiss a claim under 12(b)(6) *sua sponte* when the claimant cannot possibly win relief.[87]

Incorporating at least part of the shotgun pleading rule, a Plaintiff does not plead the "who" of fraud with *particularity* when used the *generalized* term "Defendants," instead of identifying a particular Defendant when pleading the particular Defendant's role in the fraudulent conduct.[88] It should be noted that although independent, the analysis between F.R.Civ.P 8(a)(2) and 9(b) reinforces each other. Thus, a finding that a Count is governed by the fraud/mistake particularity requirement of 9(b) *lowers* the threshold for when a shotgun pleading violates "short and plain" statement requirement of 8(a)(2), because that lack of particularity, although short is not *plain* but remains clouded in generalities. On the flip side, finding that a shotgun pleading violates "short and plain" *lowers* the threshold for when that Complaint fails to plead fraud/mistake with particularity, because the shotgun pleader serves to hide the ball by not pleading facts in the particular location required (in the Count or specifically incorporated). Simply put, g*eneral* incorporation clauses in shotgun pleadings are not very particular, nor very plainly understood because they force the reader to go on a needless treasure hunt through the statement of facts.

---

[85] *Cafasso,* 637 F.3d at 1154-1155, *citing Ebeid ex rel. U. S. v. Lungwitz,* 616 F.3d 993, 998 (9th Cir.2010), originally cited in the Ninth Circuit in *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th 2003), originally cited in *Ackerman v. Nw. Mut. Life Ins. Co.,* 172 F.3d 467, 469 (7th Cir. 1999), cert. denied, 528 U.S. 874 (1999).

[86] F.R.Civ. P. Rule 8(b).

[87] *Omar v. Sea-Land Serv., Inc.,* 813 F.2d 986, 991 (9th Cir. 1987); internally citing *Wong v. Bell,* 642 F.2d 359, 361–62 (9th Cir.1981) and 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357 at 593 (1969).

[88] *Destfino,* 630 F.3d at 958-959; *U.S. v. Corinthian Colls.*, 655 F.3d 984, 997-998(9th Cir. 2011); *Swartz v. KPMG LLP,* 476 F.3d 756, 764–765 (9th Cir. 2007).

To determine whether a count of the complaint violates 9(b), one must make a three-step inquiry, (1) which state governs the common law causes pled, (2) do those counts allege fraud or mistake, and (3) if so, do those counts allege it with sufficient *particularity*?

First, one must decide which state's law applies.[89] Because the Defendants, the Property, and the State Complaint itself are all located in Arizona, this Court finds that Arizona law governs.

Second, one must identify whether a count alleges fraud or mistake. One way is to say the term "fraud" in the count, but this magic word is not necessary.[90] Of the counts, this Court finds Counts Four, Five, Seven, and Nine allege acts and facts of fraud.

Count Four, intentional misrepresentation, is a claim of fraud under Arizona law.[91]

Count Five, negligent misrepresentation, can be a claim of fraud if it is sufficiently *grounded in fraud.* [92] Because of the general incorporation clause,[93] the paragraph pleading "in the alternative, to Count Four, Defendants made negligent misrepresentations,"[94] and parroting the same exact facts as Count 4 with the only difference being the legal conclusion drawn,[95] Count 5 was *grounded in fraud* as pled.

Count Seven, civil conspiracy, is not a claim of fraud, but does allege a fact of fraud. Plaintiffs pled that Defendants "fraudulently conceal[ed] material information" as one fact to

---

[89] *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124-1128 (9th 2009); *citing Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1105-1106 (9th 2003).

[90] *Vess,* 317 F.3d at 1106 ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used).").

[91] *Knoell v. Cerkvenik-Anderson Travel, Inc.*, 181 Ariz. 394, 402-403 (Ariz.App. Div. 1 1994).

[92] *In re Rigel Pharm., Inc. Sec. Litig.,* 697 F.3d 869, 885-886 (9th Cir. 2012); *Parcell v. Wright Med. Tech., Inc.,* No. CV 12–0368–PHX–JAT, Slip Copy, 2012 WL 2675258, at *6 (D. Ariz. 2012).

[93] Complaint, at 65, ¶ 416.

[94] *Id.* at 65, ¶ 417.

[95] *Id.* at 65, ¶ 418-420.

31

support a finding of Civil Conspiracy.[96] Thus, while the entire Count does not have to plead to particularity, the remaining alleged fact of fraud still must be pled so.[97]

Count Nine, aiding and abetting, is also not a claim of fraud, but does allege plenty facts of fraud. Plaintiffs incorporate Count 4 (intentional misrepresentation),[98] plead the substance of ML Manager's fraud,[99] then pled that Defendants "aided and abetted ML Manager in committing the same … misrepresentation, fraudulent concealment, … described above".[100] Thus, these incorporations (and application to specific Defendants) must be pled with particularity.[101]

Third, one must determine whether the individual Counts are pled with sufficient particularity to give fair notice of the "who, what, where, when, how, and why" of fraud.[102] Taken together (and excluding paragraphs pleading Defendant's state of mind), the Complaint, at least in part, fails to plead to the sufficient particularity required by F.R.C.P. 9(b).

Count Four, intentional misrepresentation, read in a vacuum, does not sufficiently plead with particularity the "who, what, where, when, how, and why" required. Plaintiffs merely rely on prior incorporations.[103] When determining what Defendant's *did*, Plaintiffs Count only points to Newsletter #8[104] and what Defendants *did not do*.[105]

---

[96] *Id*. at 66, ¶ 433.

[97] *Kearns,* 567 F.3d at 1124, *citing Vess,* 317 F.3d at 1105.

[98] Complaint, at 68, ¶ 449.

[99] *Id.* at 68, ¶ 450-452.

[100] *Id.* at 69, ¶ 455.

[101] *Supra,* Note 87.

[102] *Supra,* Note 84.

[103] Complaint, at 64, ¶ 404-405.

[104] *Id.* at 63, ¶ 404.

[105] *Id.* at 63, ¶ 405.

32

Searching throughout the Statement of Facts for Newsletter #8, Plaintiffs pleads particularity in two misrepresentations. First, Newsletter #8 stated "[t]his budget was prepared before ML Manager LLC came into existence and our Board had nothing to do with its preparation . . . ."[106] Plaintiffs rebut "even though (I) every member of the ML Board participated in the Bankruptcy Case, (ii) ML Manager's counsel served as counsel for the plan proponent, and (iii) ML Manager's counsel extensively argued at plan confirmation that those budgets and projections were sufficiently reliable to fulfill the legal requirement that a plan be financially feasible to be confirmed."[107] Second, Newsletter #8 "stated . . . that Plaintiffs were the cause of at least part of ML Manager's dire financial situation."[108] As a third catch-all, Plaintiffs connect Newsletter #8 to what Defendants *did not do*:[109] Plaintiffs also rely on Newsletter #10 and #11 for support.[110] What Defendants *didn't do* is identified as disclose "the defaults of the Exit Financing, the existence of the Forbearance Agreement, and ML Manager's dire financial situation . . . ."[111]

These allegations do not plead to the sufficient level of particularity required. First, the connection between the legal conclusion and facts pled is impermissibly vague (*e.g.*, compare "participation" to "preparation"; and "Counsel" to "Board"). Further, the traditional "who, what where, how, and why it is false," necessary for purposes of Rule 9, is entirely missing. Even if the particular facts of fraud were pled to sufficient particularity, because the Count is *grounded in fraud*, other elements other of the claim (other than intent) must also be pled in

---

[106] *Id.* at 35, ¶ 218.

[107] *Id.* at 35-36, ¶ 218.

[108] *Id.* at 36, ¶ 219.

[109] *Id.* at 35, ¶ 217 (Newsletter #8 "intentionally omitted … material facts, including, without limitation, the ML Board's knowledge that ML Manager was in default of, or in imminent threat of defaulting on, the Exit Financing.").

[110] *Id.* at 40-41, ¶ 250-259.

[111] *Id.*, at 63, ¶ 405.

33

particularity (*e.g.* materiality, reasonable reliance, etc.). These other elements were not pled sufficiently to comply with Rule 9. [112]

Count Five, negligent misrepresentation, read in a vacuum, does not sufficiently plead with particularity the "who, what, where, when, how, and why" required. Because its structure and explicit incorporation parallels Count Four, that analysis applies equally to Count Five.

Count Seven, civil conspiracy, contains two facts pled – "false representations" and "fraudulently conceal material information" that allege fraud. Although the entire claim is not grounded in fraud, these particular facts must be pled in particularity. No specific incorporation is made. Thus, Count Seven, in part, does not plead the "who, what, where, when, how, and why" required.

Count Nine, aiding and abetting, relies, in part, on incorporating Count Four's facts alleging fraud. These particular facts (or incorporations) must be pled specifically. Count Nine does not do so.

In no way, shape, or form did Plaintiffs plead the "who, what, where, when, how, and why" required. Accordingly, the motion to dismiss is granted as to Counts Four, Five, Seven (in part), and Nine (in part), with leave to amend except to the extent such Counts or portions thereof have been dismissed on grounds of res judicata and/or quasi-judicial immunity.

DATED AND SIGNED ABOVE

---

[112] *Id.* at 64, ¶¶ 406, 411.

34